BRISCOE, Circuit Judge,
dissenting.
I respectfully dissent from the majority opinion. First, I disagree with the conclusion that the display on the Denver steps is solely government speech. Second, I disagree with the conclusion that Denver has a neutral policy of banning all unattended displays from the steps. Third, I disagree with the majority’s analysis of the Establishment Clause issue.

Standard of Review

In a First Amendment case, this court performs an independent examination of the record to ensure protection of free speech rights. Hawkins v. City & County of Denver, 170 F.3d 1281, 1285 (10th Cir.), cert. denied, 528 U.S. 871, 120 S.Ct. 172, 145 L.Ed.2d 145 (1999). “In cases involving the First Amendment, the de novo standard is appropriate.... [A]n appellate court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression.” Horst-koetter v. Dep’t of Pub. Safety, 159 F.3d 1265, 1270 (10th Cir.1998) (internal quotations omitted).

Government Speech

The majority concludes that the display on the steps is government speech rather than private speech. This conclusion is significant because “when the State is the speaker, it may make content-based choices.” Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 833, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995). I agree with Wells that the holiday display is not solely government speech, but contains private speech, because it includes a billboard which states:
*1155 HAPPY HOLIDAYS FROM THE
Keep the Lights Foundation and the sponsors that help maintain lights at the City and County Building
News 4 Spirit of Colorado Coors Light
King Soopers • AAA of Colorado Denver Rocky Mountain News Rock Bottom Brewery
Maj. Op. Add. This large billboard is the only sign evident from the photos of the display included in the record and it appears to dominate one side of the display. See id.
The majority states that the billboard with the list of sponsors is a thank you from the city to the sponsors, making it government speech. However, the language of the billboard is not phrased as a thank you from Denver to the sponsors. Rather, it is a greeting from the sponsors to the public. To a passerby, the billboard does not appear to be from Denver, but from the sponsors, all of whom are private entities. The billboard shows that those private corporations have co-sponsored the holiday display, also making the display their speech as well as Denver’s speech.
In determining this is government speech, the majority relies on the four-factor “test” in Knights of Ku Klux Klan v. Curators of University of Missouri, 203 F.3d 1085 (8th Cir.2000). However, it is not clear whether the court in Knights of KKK was creating a test to be applied in all government speech cases, or whether it was identifying the factors that evidenced government speech in that case. See id. at 1093-94. An additional factor relevant to the inquiry is who the listener believes to be the speaker. See id. at 1094 n. 9 (differentiating the underwriting announcements from letters to the editor because the letters “are more obviously the speech of the writer, not the government”).
In Knights of KKK, it was clear that the government was speaking. See id. at 1093-94. Similarly, in Downs v. Los Angeles Unified School District, 228 F.3d 1003, 1009-11 (9th Cir.2000), it was clear to the reader that the bulletin board constituted government speech, as presented by a state-employed teacher. In the present case, it is not clear to the reader/listener that the government, rather than the sponsors, is the speaker. All of the factors identified by the majority (purpose of the sign, who paid for and built the sign, legal responsibility of the display) address who is actually responsible for the message on the sign. While I agree that Denver owns and controls the sign, there is no way for the casual reader/listener to know this. To a passerby, the sign and the message are from a group of private organizations, and the holiday display is at least in part their speech. I dissent from the majority holding that the display is government speech.

Neutral Policy

The majority also concludes that Denver has a content-neutral policy of banning all unattended displays from the steps. Because the steps are either a traditional or a designated forum, such a policy would be a constitutional time, place, and manner restriction. See Capitol Square Review & Advisory Bd. v. Pinette, 515 U.S. 753, 761, 783-84, 115 S.Ct. 2440, 132 L.Ed.2d 650 (Souter, J. concurring), 803 (Stevens, J. dissenting) (1995). However, I disagree with the conclusion that Denver has such a policy.
John Hall testified that private unattended displays are not permitted on the *1156 steps or the interior sidewalk and that this unwritten policy had been in place since at least 1985. However, on the two occasions that Wells requested information about the need for a permit related to her sign, she was not told of such a policy. An anonymous caller inquiring about adding a menorah to the holiday display was not told about this policy. Following the Columbine tragedy, a display of cards, flowers, and stuffed animals remained on the interior sidewalk in front of the steps of the building for over ten days. Further, the annual Christmas display is itself an exception to the policy, as it is replete with unattended displays and signs.
The majority states that the fact that the policy was not identified to Wells or the anonymous caller does not mean it does not exist, and that the Columbine display was a one-time exception. However, Denver’s failure to enforce the policy consistently should come under very close scrutiny. See Members of City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 816, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984) (“To create an exception for appellees’ political speech and not these other types of speech might create a risk of engaging in constitutionally forbidden content discrimination.”). If Denver is permitted to make exceptions to its policy that private unattended displays are not permitted on the steps or interior sidewalk, or if Denver is permitted to make these exceptions without any established standards, it has the sort of unbridled discretion that permits viewpoint discrimination and violates the First Amendment. See Schad v. Borough of Mount Ephraim, 452 U.S. 61, 84, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981) (Stevens, J., concurring) (“[M]u-nicipalities may regulate expressive activity — even protected activity — pursuant to narrowly drawn content-neutral standards; however, they may not regulate protected activity when the only standard provided is the unbridled discretion of a municipal official.”). The majority reasons that the discretion is not unbridled because it has been exercised only for the Columbine tragedy. However, there is no indication that the policy was enforced prior to Wells’ request, only that the policy existed. Further, the fact that Denver has not exercised its discretion to permit an exception to its policy on numerous occasions does not make the exercise of its discretion any less unbridled. There are no clear restrictions on the City’s discretion or established standards which would in any way restrict the City when granting an exception to its policy banning unattended displays.
Because the policy of disallowing unattended displays from the steps is unwritten and subject to exceptions for which there are no standards, the policy is not a content-neutral time, place, and manner restriction, and it does not pass constitutional muster.

Establishment Clause

The majority concludes there is no Establishment Clause violation because we previously have found the Denver display to be constitutional and because the unattended display ban passes the test created in Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). I disagree.
The case of Citizens Concerned for Separation of Church & State v. City & County of Denver, 508 F.Supp. 823 (D.Colo. 1981), aff'd, No. 82-1022 (10th Cir. May 14, 1984) (unpublished order), is not persuasive or controlling authority for the resolution of the Establishment Clause issue presented. Citizens dealt with the question of whether the display’s inclusion of a creche was unconstitutional. It did not address the question of whether including a creche while excluding other religious messages was constitutional. This court has not addressed the question of exclusion of religious messages from holiday displays.
*1157 I agree with the majority that a content-neutral policy banning all unattended displays would pass the Lemon test. However, because such a policy does not exist here, I would apply the Lemon test to the decision to exclude Wells’ sign, rather than any alleged policy to ban all unattended displays. Under the Lemon test, the statute or action must have a secular purpose, the primary or principal effect must neither advance nor inhibit religion, and it must not foster excessive government entanglement with religion. Lemon, 403 U.S. at 612-13, 91 S.Ct. 2105.
Under Lemon, the first question is whether the decision to prohibit Wells’ sign has a secular purpose. Denver argues that its purpose in prohibiting the sign is to keep the steps from being blocked. However, this justification is meaningless since Wells proposed putting the sign within the fenced-off display which Denver already had located on the steps. Denver has not identified any other secular reason for its decision.
Under Lemon, the second question is whether the principal or primary effect is one that neither advances nor inhibits religion. In Conrad v. City & County of Denver, 724 P.2d 1309, 1316 (Colo.1986), the court held that the holiday display’s primary effect was not to advance or inhibit religion. However, the court noted that the presence of a nativity scene may have the remote and incidental effect of advancing religion.
Hall testified that when an anonymous caller asked if she could put a menorah in the holiday display, Hall told her that she could not. Thus, Denver has taken the position that, as regards religious items, only items pertaining to the holiday of Christmas are welcome in its display. Wells’ sign, like the menorah, represents an alternative religious perspective that Denver has opted to exclude from its display. The decision to exclude Wells’ sign and a menorah from the display sends the message that Denver supports Christianity and does not support other religions or religious viewpoints. When the City creates that impression, it violates the Establishment Clause. Because the decision to allow only Christian symbols in the display and to prohibit other religious perspectives has the primary effect of promoting or inhibiting religion, Denver’s decision fails the second prong of the Lemon test.
Under Lemon, the third question is whether the decision fosters excessive government entanglement with religion. To determine this question, we are required to inquire as to whether there is excessive administrative entanglement and whether the government action causes continuing political strife over aid to religion. Conrad, 724 P.2d at 1316. The answer to both of these questions is no. The only administrative responsibilities involved are to deny the requests of all persons who wish to have their non-Christian religion represented in the display. This is not complicated and has not taken much administrative time. The only political strife that exists is caused by litigation such as the present case. A plaintiff cannot create strife by litigating and then arguing that the policy causes strife. Therefore, Denver’s decision passes the third prong of the Lemon test.
Because the decision to exclude Wells’ sign violates the first two prongs of the Lemon test, I dissent from the opinion’s holding that there is no basis for concluding there is an Establishment Clause violation established in the present case.
I would reverse the district court’s dismissal of Wells’ claims and remand for further proceedings.